**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| INTAKE BREATHING TECHNOLOGY, LLC, | |
| Plaintiff, | C.A. No. _____ |
| v. | JURY TRIAL DEMANDED |
| THE INDIVIDUAL PARTNERSHIP AND UNINCORPORATED ASSOCIATION IDENTIFIED ON SCHEDULE "A," | |
| Defendant. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Intake Breathing Technology, LLC ("Intake" or "Plaintiff"), by and through its undersigned counsel, brings this action for patent infringement under 35 U.S.C. § 271 against Defendant, the Individual Partnership and Unincorporated Association Identified on Schedule "A" ("Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1.    This is a civil action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 101 *et seq.* and common law trade dress infringement. By this action, Plaintiff seeks to prevent Defendant from infringing on Plaintiff's intellectual property rights, causing

1

confusion in the marketplace, and unfairly benefiting from Plaintiff's reputation and goodwill.

2. Plaintiff seeks (i) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendant from infringing Intake's U.S. Patent No. 9,510,969 ("Asserted Patent") and damages, expenses, and attorneys' fees arising from Defendant's willful infringement of the Asserted Patent; and (ii) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendant from using Intake's common law trade dress in connection with the manufacture, distribution, advertising, promotion, offering for sale, and/or sale of Defendant's goods.

## THE PARTIES

3. Plaintiff, Intake Breathing Technology, LLC is a California limited liability company with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101, and is the owner of all rights asserted in this action.

4. Defendant is an individual and/or business entity of unknown makeup who owns and/or operates one or more e-commerce stores under at least the Seller Alias identified on the Schedule A who, on information and belief, is located in or operates in conjunction with a drop service located in Brazil.

5.    On information and belief, Defendant has listed an inaccurate business for at least the Seller Alias identified on Schedule A. As detailed below, Plaintiff's investigation shows the listed address is a single-family home in Orlando, Florida, which is currently on the market for sale and pending.

6.    On information and belief, Defendant is a foreign individual or corporation who has both incentive and capacity to hide its assets once warned that its funds are at risk. Defendant also is not likely to submit to the authority of this Court and to preserve sufficient funds to satisfy any judgments that the Court may issue against it. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

## JURISDICTION AND VENUE

7.    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

8.    The Court has supplemental jurisdiction over Plaintiff's common law trade dress infringement claim pursuant to 28 U.S.C. § 1367(a).

9.    This Court has personal jurisdiction over Defendant because, among other reasons and upon information and belief, Defendant directly targets its business activities toward consumers in the United States, including Florida, through at least the fully interactive, e-commerce store operating under the Seller Alias identified in the Schedule A. Specifically,

3

Defendant has targeted sales to Florida residents by setting up and operating at least one e-commerce store that targets United States consumers using one or more Seller Alias which offers shipping to the United States, including Florida, accepts payment in U.S. dollars and, on information and belief, has sold products incorporating Plaintiff's invention to residents of Florida. Defendant has committed acts of infringement in this District, including at least through providing, advertising, promoting, offering to sell, using, making, selling, and/or importing the infringing products in or into this District. Upon information and belief, Defendant has purposefully availed itself of the privilege of doing business in the State of Florida, and has purposefully directed its infringing activities at the State of Florida by providing goods to the residents of this District and by registering an LLC in this District.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, on information and belief, Defendant is a foreign company and may be sued in any judicial district. In the alternative, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and/or 1400(b) because Defendant has organized a purported principal place of business in this District and because Defendant has committed acts of infringement in this District, including the manufacture, use, sale, marketing, offer for sale, and/or importation of infringing products in or into this District and directed to customers within this District.  Upon information and belief, a substantial part

of the events giving rise to Plaintiff's trade dress and patent claims also occurred in this District.

**FACTS AND BACKGROUND**

**A.      Plaintiff's Intellectual Property Rights**

11.      Plaintiff is the owner of all right, title, and interest in and to U.S. Patent No. 9,510,969 (the "'969 Patent"). A true and correct copy of the '969 Patent is attached as **Exhibit 1**.

12.      The '969 Patent issued on December 6, 2016. (*See* Ex. 1.)

13.      The '969 Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

14.      The '969 Patent is directed to nasal adhesives that attach to the user's nose and interact and cooperate with a breathing system apparatus. A representative picture of Plaintiff's nasal adhesive product embodying the '969 Patent is shown below, along with a representative picture of Plaintiff's breathing apparatus, with which its nasal adhesive product is designed to interact and cooperate:

5





15.    Plaintiff's patented nasal adhesives are used as part of Plaintiff's innovative nasal dilator system, which includes at least the nasal adhesives, a magnetic band, and an applicator to apply the nasal adhesives.

16.     The patented nasal dilator technology in the '969 Patent was invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the nasal dilator system was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose.  This experience prompted him to improvise a device that would keep the nostrils open—even under pressure—leading to the initial development of the technology.

17.     The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for athletes of all kinds and for people struggling with nasal breathing in everyday life. What started as a solution for a breathing problem in motorsports evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

18.     Plaintiff's product line embodying the '969 Patent and displaying Plaintiff's distinctive trade dress under the brand name "Intake®" ("Plaintiff's Products") is sold exclusively under the Intake brand by Plaintiff and two distributors, including through Intake's website (www.intakebreathing.com) and by Plaintiff on e-commerce platforms such as Amazon.com and TikTok.

True and correct copies of web captures from Intake's website are attached as **Exhibit 2**.

19.    Plaintiff's Products have been hugely successful. After being used and worn by many professional athletes, including in televised interviews, Plaintiff's Products went viral on social media, including on TikTok.

20.    Plaintiff has developed and owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal dilator products, including its nasal dilator system as a whole as well as the magnetic nasal band (marketed as the "Relief Band"), magnetic applicator, and nasal adhesive tabs which make up the system's components parts. The Relief Band and magnetic applicator are pictured below:



21.    Each of the product components and the system as a whole each constitute a separate and independently protectable trade dress.

22.    The Relief Band trade dress consists of the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental

finish and texture, and the overall visual impression created by the combination of these elements.

23. The Relief Band trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

24. In the minds of consumers, the Relief Band trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the Relief Band trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the Relief Band trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the Relief Band; and (e) consumer association of the Relief Band trade dress with Intake as the source of the product.

25. The Relief Band trade dress is non-functional.

26. Alternative designs exist that would permit competitors to manufacture rigid, magnetic, nasal bands without copying the distinctive overall appearance of Intake's Relief Band.

27. The magnetic applicator trade dress consists of the total image and overall appearance of Intake's applicator device, including at least the

9

following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual impression created by the combination of these elements.

28. The magnetic applicator trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

29. In the minds of consumers, the magnetic applicator trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the magnetic applicator trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the magnetic applicator trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the magnetic applicator; and (e) consumer association of the magnetic applicator trade dress with Intake as the source of the product.

30. The magnetic applicator trade dress is non-functional.

31. Alternative designs exist that would permit competitors to manufacture applicator devices without copying the distinctive overall appearance of Intake's magnetic applicator.

32. Through Intake's extensive marketing efforts, consistent product presentation, and service to over one million customers, consumers encountering products displaying any of the foregoing trade dress immediately identify such products as originating from Intake. Intake's marketing emphasizes Intake's unique technological offerings and health benefits. (*See* Ex. 2).

33. Intake possesses valid and enforceable common law trade dress rights in each of the foregoing trade dress elements.

34. Defendant is not licensed under the '969 Patent or any other Intake patents and is not authorized to practice the inventions claimed therein.

35. Defendant is not authorized to use, copy, or mimic Plaintiff's trade dress nor any confusingly similar variation thereof.

**B.   Defendant's Unlawful Conduct**

36. The viral success of Plaintiff's Products has resulted in significant and exponential infringement of Plaintiff's Patent. Due to the growing popularity and demand for Plaintiff's highly-effective and high-quality patented nasal dilator technology, opportunistic sellers including Defendant have entered the market with infringing products that attempt to mimic

11

Plaintiff's products and that infringe on its patents. Because of this ongoing infringement, Plaintiff is currently losing sales in at least the five-figure range on a monthly basis, severely affecting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

37.    Defendant is currently making, using, selling, advertising, offering for sale, and/or importing into the United States nasal adhesives that imitate Plaintiff's genuine products and infringe the '969 Patent (the "Accused Products"); and Defendant uses images that depict Plaintiff's protected trade dress to advertise the infringing Accused Products.  Defendant is currently offering the Accused Products for sale via at least their webpage on Amazon.com, including at the listing identified on Schedule "A".

38.    A representative picture of the Accused Products, as advertised on Defendant's Amazon page, taken from the true and correct representative web captures of Defendant's website attached as **Exhibit 3**.

12



39. The Accused Products meet multiple claims of the '969 Patent, including each and every limitation of at least representative claim 1 of the '969 Patent.

40. Publicly available materials, including the product itself and Defendant's advertising, confirm that the Accused Products practice the claimed elements of the '969 Patent.

41. Specifically, Plaintiff's claim charts show that the Accused Products infringe at least claim 1 of the '969 Patent. The representative claim chart is attached as **Exhibit 4**.

42. The unauthorized manufacture, use, sale, offer to sell, and importing into the United States of the Accused Products constitutes infringement under 35 U.S.C. § 271(a) and (c).

43. Defendant had notice of the '969 Patent and that the Accused Products infringe the '969 Patent since at least the filing of this Complaint.

44. On information and belief, Defendant is willfully infringing Plaintiff's patents and knowingly seeking to trade off the success of Plaintiff's inventions without Plaintiff's authorization.

45. Defendant also advertises its Accused Products using images of Plaintiff's trade dress, creating a likelihood that consumers will be confused into believing Defendant's products are offered by Plaintiff or otherwise associated or affiliated with Plaintiff.

46. Below are two captures taken from true and correct web captures of Defendant's Amazon page showing Plaintiff's trade dress in advertisements for the Accused Products (*see* Ex. 3), as well as an additional image showing Plaintiff's trade dress as used on Defendant's actual product packaging:

14





47.    Defendant's marketing images convey the same distinctive overall commercial image and appearance of Plaintiff's Relief Band and magnetic applicator.

48.    For example, a comparison of Defendant's marketing and product packaging images with Plaintiff's genuine products demonstrates Defendant's infringement of Plaintiff's trade dress in the overall commercial image and appearance of Plaintiff's Relief Band and magnetic applicator:

| Infringing Image | Intake's Authentic Product |
|---|---|



| Infringing Image | Intake's Authentic Product |
|---|---|
|  | |

49. On information and belief, in a deliberate effort to benefit from Plaintiff's reputation and trade on the valuable common law rights, goodwill, and consumer trust and recognition established by Intake's trade dress, Defendant has blatantly infringed the same by advertising the Accused Products using images of products that use Plaintiff's trade dress.

50. Defendant is not authorized to use any of Plaintiff's intellectual property, including Plaintiff's patents or trade dress.

## C. Defendant's Evasive Behavior

51. When Plaintiff filed a December 2025 APEX takedown against Defendant's infringing listing on Amazon, Defendant responded by emailing Amazon in January 2026, copying Plaintiff, purportedly via a law firm that does not have a known location and that misspells its own name in multiple places, including when listing the "founders" of the firm. The website for that

purported law firm lists only two lawyers that are the same as the "founders," both using only AI-generated images. One "founder" does not even use a full name and goes only by "MR. Raza." Upon information and belief, neither person listed has a presence outside of that website. True and correct copies of web captures from the law firm website are attached as **Exhibit 5**.

52.    This purported law firm submitted lengthy documentation to Amazon unrelated to Plaintiff's claims, which also appeared to be generated by AI and was signed by yet another lawyer—Ali Muhammad—who does not appear on the firm website and who also does not appear to have a presence outside of that signed document, including that the bar number that was listed under that person's name on the submitted documents does not appear to be associated with a specific U.S. state. True and correct copies of an email exchange between Plaintiff's counsel and Defendant's purported counsel with Amazon is attached as **Exhibit 6**.

53.    Following Defendant's January email, Plaintiff's lawyers replied to Defendant, its purported attorneys, and to Amazon, notifying all parties of Defendant's patent infringement and providing a detailed claim chart showing exactly how the infringing product meets each and every element of the asserted patent and demonstrating that Defendant's only non-infringement argument—that it did not sell additional components of the nasal dilator system not covered by the patent—was irrelevant. (*See* Ex. 6).

54.    Nevertheless, Defendant re-emerged in April 2026 with another infringing listing.  This time, Defendant changed its address from a Brazilian address associated with its first listing to one in Orlando, Florida.  The new address is a residential address for a home currently listed on the market for sale and under contract. On information and belief, that address is not associated with Defendant's principal place of business nor its registered agent.

55.    Upon information and belief, these tactics used by Defendant are to conceal its true identity and the full scope of its operation and inner workings of its network. If Defendant provides additional credible information regarding its identity, Plaintiff will take appropriate steps to amend the Complaint.

56.    Defendant has both incentive and capacity to conceal, destroy, alter, sell-off, transfer, or otherwise dispose of or deal with infringing products or other goods that infringe the Patent-in-suit and records relating thereto that are in its possession or under its control.

57.    Defendant has both incentive and capacity to inform its suppliers and manufacturers of infringing products with the result being that those suppliers and manufacturers may also conceal, sell-off, or otherwise dispose of infringing products infringing the Patent-in-suit. Defendant has both incentive and capacity to conceal the means of obtaining or manufacturing such

19

infringing products, and records relating thereto that are in its possession or under its control.

58.    Defendant has both incentive and capacity to conceal, transfer, or otherwise dispose of its ill-gotten proceeds from its sales of infringing products and records relating thereto that are in its possession or under its control.

59.    Defendant has both incentive and capacity to open new user accounts and Amazon merchant storefronts under new or different names and continue to offer for sale and sell infringing products with little to no consequence.

## COUNT I

### PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '969 PATENT

60.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–59 as if separately repeated herein.

61.    Plaintiff is the exclusive owner of all rights, title, and interest in and to the '969 Patent, titled "Nasal Element For A Breathing System," duly and legally issued by the United States Patent and Trademark Office on December 6, 2016, including the right to bring this suit for injunctive relief and damages.  (*See* Ex. 1.)

62.    The '969 Patent is valid and enforceable.

63.    Defendant makes, uses, offers for sale, sells, and/or imports the Accused Products that directly infringe, whether literally or under the doctrine

of equivalents, one or more claims of the '969 Patent, including at least representative claim 1.

64.    The Accused Products satisfy each and every claim limitation of at least one claim of the '969 Patent. A claim chart comparing representative claim 1 of the '969 Patent to a representative sample of the Accused Products is attached as Exhibit 4. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

65.    Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '969 Patent.

66.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '969 Patent pursuant to 35 U.S.C. § 271.

67.    Defendant had actual knowledge of the '969 Patent and that the Accused Products infringe the '969 Patent since at least the filing of this Complaint.

68.    Defendant has profited from their sales of the Accused Products and its infringement of the '969 Patent.

69.     As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

70.     Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least after the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

71.     Defendant's continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendant's continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

72.     Defendant's infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

### TRADE DRESS INFRINGEMENT (COMMON LAW)

73.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–59 as if separately repeated herein.

74.     Plaintiff owns trade dress rights in its nasal dilator system and each of its component parts, including its Relief Band and magnetic applicator components.

75.     Plaintiff's trade dress in its Relief Band and magnetic applicator consists of (1) the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements; and (2) the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual

design with Intake's travel case; and the overall visual impression created by the combination of these elements.

76.     Plaintiff's trade dresses are non-functional and do not yield any utilitarian advantage.

77.     Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing nasal bands and applicators without copying Intake's distinctive trade dress. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Intake's unique, signature ornamental designs. The availability of these alternative designs demonstrates that Intake's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake's distinctive product appearance.

78.     Plaintiff's trade dresses have secondary meaning; and Plaintiff is the originator of the unique design for its nasal dilator system and its component parts.

79.     Plaintiff has been advertising and selling its patented nasal dilator system since at least 2019 as a unique and original creation.

80.     Defendant's public display, advertising, promoting, offering for sale, and sale of the Accused Products using images containing Plaintiff's

24

distinctive trade dress is likely to cause confusion in the marketplace as to the source of the Accused Products and/or an affiliation or connection with Plaintiff.

81. Plaintiff's trade dress is strong, unique, and has secondary meaning. Defendant's Accused Products are advertised using images substantially similar to Plaintiff's trade dress in terms of overall image and appearance—the designs, shape, and overall visual impression are identical.

82. Specifically, Defendant's advertising conveys the same distinctive overall commercial image and appearance of Plaintiff's Relief Band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

83. Defendant's advertising also conveys the same distinctive overall commercial image and appearance of Plaintiff's magnetic because the depicted applicator uses the specific aesthetic shape, contours, and configuration of Plaintiff's magnetic applicator, as well as the color and ornamental surface finish, the coordinated visual design with Intake's travel case, and the overall visual impression created by the combination of these elements.

84. The Accused Products and Plaintiff's Products both include nasal adhesives designed to be used with a nasal dilator system and have been presented to customers in the same channels of trade, namely, via e-commerce.

25

On information and belief, the goods travel in the same marketing channels, including on social media.

85.    Defendant's advertising, promoting, offering for sale, and sale of the Accused Products infringes upon Intake's trade dress in violation of Florida common law.

86.    As a direct and proximate result of Defendant's trade dress infringement, Defendant has caused, is causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Intake, for which there is no adequate remedy at law, and for which Intake is entitled to injunctive relief.

87.    As a direct and proximate result of Defendant's infringement of Intake's trade dress, Intake has been damaged in an amount to be proven at trial and is entitled to collect damages from Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant on the claims set forth above and respectfully requests that this Court:

A.    Enter judgment against Defendant finding that Defendant (i) has directly infringed, literally or under the doctrine of equivalents, one or more claims of the Asserted Patent and (ii) has infringed Plaintiff's trade dress rights in violation of common law trade dress rights;

26

B.    Enter judgment against Defendant finding that Defendant has willfully infringed one or more claims of the Asserted Patent and Plaintiff's common law trade dress rights;

C.    Temporarily, preliminarily, and permanently enjoin Defendant, its affiliates, officers, agents, employees, assigns, representatives, and all persons acting for, with, by, through, under, or in active concert with Defendant:

a.  from making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon the Asserted Patent, including the Accused Products;

b.  from any further acts of trade dress infringement, including selling or advertising the Accused Products using images of Plaintiff's trade dress;

D.    Award Plaintiff all available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's patent infringement that occurred pursuant to 35 U.S.C. § 284 to the full extent permitted, an award of Plaintiff's profits from its patent infringement pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285 and all other applicable statutes and rules in common law as may apply;

27

E.     Award Plaintiff its actual damages resulting from Defendant's trade dress infringement, including as appropriate pursuant to 15 U.S.C. §§1125 and 1117.

F.     Award Plaintiff any profits that Defendant derived from its patent infringement and trade dress infringement, including as appropriate pursuant to 15 U.S.C. §§ 1125 and 1117;

G.     Award Plaintiff all additional available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's trade dress infringement including corrective advertising damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125 and 1117;

H.     Award Plaintiff supplemental damages or profits for any prejudgment interest and post-judgment interest, continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed;

I.     Declare Defendant's patent infringement willful and order an enhancement of damages up to three times during the period of willful infringement;

J.     Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, costs, and expenses incurred in connection with this action under 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable by a jury as of right in this action.

Respectfully submitted the 20th day of May, 2026.

/s/ *Melanie C. Verdecia*
Melanie C. Verdecia, Esq.
(FL Bar No. 123855)
QUARLES & BRADY LLP
101 East Kennedy Boulevard,
Suite 3400
Tampa, Florida 33602
Tel.: (813) 387-0300
melanie.verdecia@quarles.com

Dawn M. David, Esq.
(*pro hac vice* forthcoming)
QUARLES & BRADY LLP
411 E Wisconsin Ave.,
Suite 2400
Milwaukee, WI 53202
Tel.: (414) 277-5000
dawn.david@quarles.com

*Attorneys for Plaintiff Intake
Breathing Technology, LLC*

29